IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Dale Joseph Burke, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER RE PENDING DISCOVERY** |
| | ) | **MOTIONS** |
| vs. | ) | |
| | ) | |
| North Dakota Department of | ) | |
| Corrections and Rehabilitation, and | ) | Case No. 1:07-cv-004 |
| Warden Tim Schuetzle, Deputy Warden | ) | |
| Pat Branson, Medical Director Kathy | ) | |
| Bachmeier, Correctional Officer J. | ) | |
| Peterson, and Lieutenant Ron Bjelland, | ) | |
| in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## I.  BACKGROUND

Plaintiff Dale Burke is a prisoner at the North Dakota State Penitentiary ("NDSP"). In his initial complaint, Burke alleged a number of claims the general thrust of which was that state officials had wrongfully refused to recognize his claims of disability, that NDSP officials were continually retaliating against him (including failing to protect him) on account of the fact that he had previously prevailed in a civil rights action against the NDSP, and that he was being denied certain religious rights. In his initial complaint, Burke sought one million dollars in damages and certain injunctive relief for alleged violations of the ADA and injunctive relief for the remaining claims. Also, the only named defendants were the North Dakota Department of Corrections (NDDOCR) and the North Dakota Protection and Advocacy Project.

The court's 1915A screening order allowed Burke to proceed with a number of the claims against the NDDOCR, but noted the problem of the State of North Dakota's sovereign

1

immunity. The court dismissed the claims against the North Dakota Protection and Advocacy Project.

Burke next moved to amend his complaint to add several NDSP prison officials as defendants in their official capacities, apparently to address the problem of the State's sovereign immunity with respect to the requested injunctive relief. The court granted the motion.

On March 11, 2008, Burke filed a Request for Production of Documents that the court has treated as a motion to compel. On May 10, 2008, following the filing of a motion for summary judgment by the defendants, plaintiff requested additional time to respond until the discovery issues could be resolved and also made a request for additional discovery in light of the information that the defendants have used in support of their motion for summary judgment. What follows are the court's rulings on the motions.

## II.     DISCUSSION AND ORDERS

### A.     Motion to compel filed on March 11, 2008, (Doc. #30)

#### 1.     Disciplinary records of Harry Leftbear

Inmate Harry Leftbear assaulted Burke on January 16, 2007. Construing Burke's complaint most favorably for him, Burke is contending that NDSP prison officials deliberately placed inmate Leftbear in a cell next to him with the hope that he would be assaulted and that this was done in retaliation for his having earlier prevailed in a civil rights action against the NDSP. Burke also claims that NDSP officials further retaliated against him with respect to the "Leftbear matter" when they brought disciplinary charges against him even though he was not the aggressor.

In his motion to compel, Burke seeks a court order compelling defendants to provide the court with copies of inmate Harry Leftbear's disciplinary records pertaining to assaults on Caucasian inmates and that the court then review the documents and pass on to the plaintiff the "statistics" regarding the same.  The defendants oppose the motion claiming that the records apply to another inmate and that the disciplinary records may contain information about other inmates which, if revealed, may pose a serious threat and security to Leftbear and the other inmates as well as to staff at the NDSP.

While it appears that Burke has very high hurdle to overcome in proving his claims with respect to this matter,[1] the information sought arguably may be relevant.  In fact, the only objection of the defendants is with respect to security concerns, which Burke is willing to accommodate by his proposal.  Further, one of the purposes of discovery is test the accuracy of what may be claimed by the opposing party.

Based on the foregoing, its hereby **ORDERED** that the defendants within twenty (20) days file under seal with the court in camera and without service upon Burke, a summary of Leftbear's disciplinary convictions relating to all of his incarcerations at the NDSP to the current

---

[1] The defendants claim in their motion for summary judgment that Leftbear had no record of assaultive behavior prior to the January 16, 2007, altercation involving Leftbear, Burke, and another prisoner.  The defendants also claim that Leftbear was moved to another cellblock away from Burke after he served his disciplinary detention for the assault on Burke.  Also, while it does not go directly to the purported reason for Leftbear's cell assignment, the court notes that the following comments are attributed to Burke during the disciplinary process related to the Leftbear assault:
> I Get Along Well With Harry Leftbear Always Have Harry Gets Coffee from Me and I Am Friendly with Him.  This the First Time I've Had Problems with Him.  Yes Harry Has Assaulted Mostly White People.

(Docket No. 46-2 at p. 6).

3

date[2] that pertain to assaults or threats of assault and indicate, if possible, whether the victim of any assault or threatened assault was Caucasian.

### 2. Michael Damron lawsuit records

Burke claims that NDSP officials falsely drafted a letter address to them in Burke's name containing negative information about another the inmate Michael Damron. Burke further claims that NDSP officials, and specifically Warden Schuetzle, released a copy of the letter to inmate Damron during a federal lawsuit brought by Damron, which included as defendants several of the same defendants who are named in this action. He further alleges that NDSP officials released the letter so that he would be identified in the prison population as a "snitch" and be subject to harm in order to get back at him for having prevailed in his earlier civil action. The defendants agree that the letter referenced by Burke was disclosed to inmate Damron during the course of Damron's federal lawsuit, but state that Burke authored the letter. They also dispute the claimed motivations and the circumstances of the disclosure. In terms of his motion to compel, Burke requests that the court order the defendants to turn over the entire record of the lawsuit filed by Michael Damron that resulted in the disclosure of the letter identifying him as a source of negative information about Damron.

The evidentiary material accompanying defendant's motion for summary judgment strongly suggest that Burke authored the "Damron letter." In fact, it appears that Burke filed a grievance about the disclosure and in that grievance asserted in part the following:

---

[2] There appears to be some question regarding whether Leftbear was incarcerated at the NDSP more than one time. Also, given that the relief requested is injunctive relief and that the allegation is an alleged failure to protect Burke from Leftbear, the records to the current date may be relevant.

> On 7-0803 at 6:00 pm I waa told that Michael Damron was circulating a copy of a confidential letter I had written to Pat Branson about three years ago. this letter should never have been released . . . . [errors appearing in original]

(Docket No. 46-6 at p. 64). If that proves to be true, any attempt by Burke to make a false claim in this court could have severe consequences, not the least of which is that the court may decide not to give credence to Burke's factual assertions with respect to this and other matters. Further, aside from the authorship of the letter, it appears that Burke will have a high hurdle to overcome in terms proving that the letter's disclosure, which, apparently, took place in mid-2003 - almost 3 ½ years prior to the institution of this action, is a basis now for this court granting the requested injunctive relief. Finally, the limited record before the court suggests that the disclosure of the "Damron letter" was likely controlled by the North Dakota Attorney General's office, not the named defendants, and that the disclosure was either inadvertent or a matter of poor, but not malicious, judgment. In fact, the documentation indicates that, once Warden Schuetzle became aware of the fact the letter had been disclosed, he implemented policies to prevent against future disclosures that have not specifically been ordered by a court.

Nevertheless, in terms of the discovery issues before the court, the method and means of disclosure of the "Damron lettter" is arguably relevant. In fact, the only objection that the defendants have made to the request for production is that the records relating to this matter are not in their possession but are in the possession of "risk management." This, however, is a specious objection. The filings made by the North Dakota Attorney General's office in federal court were on behalf of many of the same defendants who are named in this action.

The Damron lawsuit itself, however, has nothing to do with this action, and there is no reason for the defendants to have to provide Burke with a complete copy of the records relating

5

to that lawsuit. Consequently, the court hereby **ORDERS** that the defendants within twenty (20) days produce to Burke a copy of the first page of the state defendant's document disclosing the letter, the portion of the document discussing the letter, and the signature page of the document disclosing the letter along with the first page of any brief or motion by the state defendants that first discussed the letter, the pages of the brief or motion referring to the letter, and the signature page on such documents. To the extent deemed necessary, the defendants may redact any extraneous information.[3]

### B. Motion for additional discovery dated May 10, 2008, (Doc. # 49)

In Burke's motion at Doc. No. 49, he requests additional discovery regarding the evidence that was used with respect to his disciplinary conviction that resulted in his losing, among other things, his afternoon recreation. Finally, he requests an opportunity to craft and serve additional interrogatories.

The court has not yet afforded the defendants an opportunity to respond to this motion. However, in reviewing the motion, the court believes that the interests of justice require the defendants to file any remaining administrative records related to the referenced disciplinary conviction for which the defendants have already disclosed statements by inmates Skinner and Newman. To the extent that the defendants believe that the disclosure of this information creates security concerns, the defendant may file the material under seal for *in camera* inspection without serving Burke along with a written explanation for why the material should not be disclosed to Burke. The court will decide at a later date what, if any, of this information will be

---

[3] The obligation for deciding what conforms to the court's order rests with the defendants. However, the defendants should consider whether Doc #28 (including Ex. E-1) and Doc # 27 in this court's Civil No. A1-03-122 are responsive to the court's order.

disclosed to Burke.  The defendants are hereby **ORDERED** to file the remaining administrative records within twenty (20) days.

The court however, **DENIES** Burke's request for additional discovery.  The time period for discovery has long past.   Notwithstanding this fact, the court has already been generous in affording Burke some leeway given his *pro se* status, but this is as far as the court is prepared to go.

Finally, the court will be contacting the parties about setting up a conference call to re-establish a briefing and litigation schedule to be held after the twenty days allowed for compliance with this order.

**IT IS SO ORDERED.**

Dated this 24th day of June, 2008.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court
